U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB -5 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

ANNISSIA MACHELLE MAYS

versus                              CIVIL ACTION NO. 11-2158
                                     Consolidated with 12-0085
PAUL C. BRACEY, M.D., ET AL.         JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is a motion to dismiss and, in the alternative, for summary judgment, filed by the remaining defendant in the case, Christus Health Northern Louisiana d/b/a Christus Schumpert Highland ("Highland"). See Record Document 30. For the reasons set forth below, Highland's motion for summary judgment is **GRANTED** to the extent that it seeks dismissal of the plaintiffs' claims of medical malpractice as premature. Highland's motion is further **GRANTED** to the extent that it seeks dismissal of the plaintiffs' claims pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA").

## I. BACKGROUND

As stated previously in the Report and Recommendations[1] issued by the

---

[1]This court has previously adopted two Report and Recommendations issued by Magistrate Judge Mark Hornsby, the first of which recommended that the motion to dismiss for failure to state a claim against emergency room doctor Paul C. Bracey

magistrate judge in this matter, this lawsuit asserts claims for alleged medical malpractice under Louisiana law and for violations of the EMTALA, 42 U.S.C. § 1395dd. The plaintiff, Annissia Machelle Mays ("Mays"),[2] alleges that, following a Christmas shopping trip with her children, she began suffering from headaches, slurred speech, numbness and weakness on the left side extremity. Her son called 9-1-1 and she was transported to Highland's emergency room in Shreveport.

Mays alleges that she did not receive appropriate medical screening and was discharged from the hospital. The next morning, Mays's symptoms persisted, and she was transported by ambulance to a different location of Christus Schumpert's emergency room. After screening, Mays was transferred to Highland for neurological services. Mays claims she suffered a massive right hemispheric stroke from which she will never recover. She alleges that Highland violated the appropriate standard of care and the EMTALA by failing to provide appropriate

---

be granted, dismissing with prejudice the plaintiffs' EMTALA claims against Dr. Bracey and dismissing without prejudice as premature the medical malpractice claims against Dr. Bracey. See Record Documents 19 and 20. The second Report and Recommendation recommended that a second motion to dismiss for failure to state a claim against Nurse Holly Miller be granted, dismissing with prejudice the plaintiffs' EMTALA claims against Nurse Miller and dismissing without prejudice as premature the medical malpractice claims against Nurse Miller. See Record Documents 29 and 32.

[2]Mays filed suit individually and on behalf of her three minor children. See Record Document 1. For ease of reference, the court will refer to the plaintiffs singularly as "Mays."

2

medical screening and treatment during her initial visit to the Highland emergency room.

## II. ANALYSIS

**A.      Summary Judgment Standard.**

Because "matters outside the pleadings [have been] presented to and not excluded by the court," the motion "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v.

---

[3]The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

3

Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.    Medical Malpractice.**

Highland argues that the malpractice claim asserted by Mays against it is premature because suit was filed before Mays's claims were submitted to a medical review panel. State and federal courts are uniform in holding that a medical malpractice suit is premature if it is filed before complying with the requirements for the medical review panel. See Foster v. Oceans Behavioral Hosp. of Baton Rouge, No. 2008 CA 0065, 2008 WL 5377636 (La. App. 1st Cir. Dec. 23, 2008); Knepper v. State Dep't of Health & Human Res. Admin., 359 So.2d 1127 (La. App. 3d Cir. 1978); Benoit v. Neustrom, No. 10-1110, 2011 WL 3759765 (W.D. La. Aug. 25, 2011); Poole v. Hologic, Inc., No. 10-CV-0314, 2010 WL 1930115 (W.D. La. May 10, 2010). Mays responds by seeking a stay of the case or, in the alternative, admitting that the case may be dismissed without prejudice. Mays's

4

medical malpractice claims against Highland should be dismissed without prejudice (as has been the case with the claims against the emergency room doctor and nurse)[4] and can be reurged once the medical review panel process has been completed.

### C. EMTALA.

Under the EMTALA, when an individual presents at a hospital emergency room requesting treatment of a medical condition, "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether . . . an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). An "emergency medical condition" is defined by the statute as:

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in --
>
>> (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
>>
>> (ii) serious impairment to bodily functions, or
>>
>> (iii) serious dysfunction of any bodily organ or part . . . .

42 U.S.C. 1395dd(e)(1)(A). If the screening reveals such a condition, the person

---

[4] See note 1, supra.

must be provided with stabilizing treatment and certain conditions are imposed upon the transfer of the individual to another medical facility. See 42 U.S.C. § 1395dd(b) and (c).

The EMTALA was enacted to prevent "patient dumping," which is the practice of refusing to treat patients who are unable to pay. See Marshall ex rel. Marshall v. East Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 322 (5th Cir. 1998). However, the EMTALA was not intended "to be used as a federal malpractice statute." Id. "Accordingly, an EMTALA 'appropriate medical screening examination' is not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms." Id. (citations omitted). "If an appropriate screening is provided and the patient's condition is determined to be non-emergent, the hospital is not liable under EMTALA, even in the event of a misdiagnosis that would subject a provider to liability in a malpractice action under state law." Stiles v. Tenet Hosp. Ltd., 2012 WL 4762212, at *2 (5th Cir. Oct. 8, 2012) (citing Marshall, 134 F.3d at 322). An "appropriate medical screening examination" is "a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms." Buras v. Highland Cmty. Hosp., 432 F. App'x 311, 313 (5th Cir. 2011) (citing Marshall, 134 F.3d at 323). Thus, to

avoid summary judgment as to the EMTALA claim, Mays must present evidence showing that there is a genuine dispute of material fact whether Highland provided an EMTALA appropriate medical examination.[5]  Mays also must show that Highland had actual knowledge that she was suffering from an emergency medical condition.  See id.; Battle ex rel. Battle v. Mem'l Hosp. at Gulfport, 228 F.3d 544, 559 (5th Cir. 2000).

Mays has not met her burden to prevent summary judgment as to her claims pursuant to the EMTALA.  Highland presented summary judgment evidence that she received an appropriate medical screening examination on her visit to Highland. Specifically, both the emergency room doctor and nurse provided affidavits that stated that Mays "was provided the same appropriate medical screening examination that would have been given to any other patient . . . in a similar condition with similar symptoms." Record Document 30, Exs. 3 and 4.  Although Mays alleged in her petition that she was "provided disparity in her treatment and not afforded medical screening and stabilization that would be provided to most Schumpert patients because she was without insurance," Mays provided no

---

[5]The court has dismissed Mays's claims pursuant to the EMTALA against the nurse and the doctor who treated her in the emergency room, as there is no private right of action against a nurse or doctor for alleged EMTALA violations.  See Record Documents 19-20 and 29-30.

evidence whatsoever to support her disparity in treatment claim regarding the treatment provided to other patients versus the treatment she received.[6] Mays instead provided the affidavits of two experts.[7] The experts concluded that Highland failed to appreciate the extent of Mays's condition, failed to order additional diagnostic procedures and failed to make a proper diagnosis. As correctly argued by Highland, even if there was a failure to do these alleged acts, Highland cannot be liable under the EMTALA because the Act is "'intended not to ensure each emergency room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to patients in similar medical circumstances.'" Marshall, 134 F.3d at 323 (quoting Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1041 (D.C. Cir. 1991)). "A treating physician's failure to appreciate the extent of the patient's injury or illness, as well

---

[6] Mays asserts that Highland treated her "with disparity from the advertised known treatment to patients with stroke symptoms." Record Document 33. However, there is no evidence before the court that the emergency room physician or nurse perceived Mays to be suffering from stroke symptoms. Mays also attempts to make much of the fact that the ambulance records reflected that Mays had "right side head pain, slurred speech and 'neurological: stroke symptoms of weakness/paralysis." Id., Ex. 3. However, there is no evidence before the court that these statements contained in the ambulance records were provided or known to the emergency room personnel.

[7] Highland objected to the affidavits provided by the experts for various reasons. As the court is granting Highland's motion for summary judgment, a ruling regarding these objections is unnecessary.

as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening." Id.; see also Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1138-39 (8th Cir. 1996) (en banc) (faulty screening does not come within EMTALA); Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 143-44 (4th Cir. 1996) (EMTALA "does not impose any duty on a hospital requiring that the screening result in a correct diagnosis").

Furthermore, Highland presented evidence that Mays did not have what was perceived by the staff to be an emergency medical condition on her visit. Both the physician and nurse on duty stated in their affidavits that the condition of Mays was determined to be non-emergent, specifically stating: "No emergency medical condition was diagnosed in patient Mays during that visit to the Highland ED. To his [or her] knowledge, Mays had no emergency medical condition at the time of her discharge. . . ." Record Document 30, Exs. 3 and 4. Again, Mays attempts to rebut these statements with conclusions by her two experts that Highland should have known that Mays was suffering from a stroke and should have provided different treatment. "Whether the ER physician breached a standard of care in failing to physically examine [Mays], or was otherwise negligent in determining [she] did not have an emergent condition, is not material to [Mays's] EMTALA

9

claim." Stiles, 2012 WL 4762212, at *4 (citing Marshall, 134 F.3d at 322-23). Similarly, as in Stiles, because the summary judgment evidence reflects that the emergency room physician determined that Mays's condition was non-emergent, Highland did not have a duty under the EMTALA to stabilize her prior to discharge. See Battle, 228 F.3d at 558 ("The duty to stabilize does not arise unless the hospital has actual knowledge that the patient has an unstabilized medical emergency.")

### III. CONCLUSION

Based on the foregoing, Mays's claims against Highland pursuant to the EMTALA do not pass muster. Accordingly, the motion for summary judgment as to the plaintiffs' claims pursuant to the EMTALA is **GRANTED**. Mays's claims pursuant to the EMTALA against Highland are **DISMISSED WITH PREJUDICE**. Highland's motion for summary judgment is further **GRANTED** to the extent that it seeks dismissal of the plaintiffs' claims of medical malpractice. The medical malpractice claims against Highland are **DISMISSED WITHOUT PREJUDICE** as premature.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 5th day of February, 2013.

JUDGE TOM STAGG